## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

**DARRELL L. MILES**                                                                    **PLAINTIFF**

**v.**                                                             **CIVIL ACTION NO. 5:16-CV-P73-TBR**

**KENTUCKY DEPARTMENT**
**OF CORRECTIONS** *et al.*                                                 **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion for a preliminary injunction (DN 7) by Plaintiff Darrell L. Miles, a prisoner at Kentucky State Penitentiary (KSP). Fully briefed, this matter is ripe for decision. For the following reasons, Plaintiff's motion will be denied.

### I. PROCEDURAL HISTORY

On May 13, 2016, Plaintiff Darrell L. Miles, who is proceeding *pro se*, filed a motion for a temporary restraining order (TRO) and a preliminary injunction (DN 1) in the United States District Court, Eastern District of Kentucky. In a Memorandum Order (DN 3), the Eastern District of Kentucky transferred the motion to this Court in accordance with 28 U.S.C. § 1391(b) because the individually-named Defendants in the motion work for KSP which is located in the Western District of Kentucky, and because the events described in the motion allegedly occurred at KSP. This motion was re-docketed as DN 7 when the action was transferred to this Court.

### II. SUMMARY OF MOTION

In Plaintiff's motion for a preliminary injunction (DN 7), Plaintiff claims that inmates and/or corrections officers at KSP have been attacking him by placing feces in his throat while he sleeps and that prison personnel have acted with deliberate indifference to the attacks and have failed to protect him from an ongoing risk of serious harm. Plaintiff alleges that he "has to cover his head with a pillow case and tie a shoe string around neck to slow down the

attacks . . . ." Plaintiff also alleges that "on two separate occasions the plaintiff's cell door was opened and the plaintiff was sexually assaulted" and that these assaults were witnessed by two different KSP officers. With regard to his feces allegations, the Court notes that Plaintiff has another case pending in the Eastern District of Kentucky in which he makes similar allegations against inmates and officials at the other correctional facilities where he has been most recently housed. *See Miles v. Bottom*, Civil Action No. 5:15-126-JMH (E.D. Ky.).

Plaintiff asks the Court to order the following in a preliminary injunction: 1) his transfer to Kentucky State Reformatory (KSR); 2) the cessation of "future attacks;" 3) that Correct Care Solutions medical staff arrange for an examination and plan of treatment by a qualified specialist; 4) that Correct Care Solutions medical staff state-wide give Plaintiff proper medical care in the future; 5) that Defendants stop retaliating against him for filing grievances and complaints; and 6) that Defendants stop reading his legal mail.

### III. LEGAL STANDARD

The Court must balance four factors in deciding whether to issue a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (internal quotation marks omitted). The four preliminary injunction factors are "'factors to be balanced, not prerequisites that must be met.'" *Michael v. Futhey*, No. 08-3932, 2009 U.S. App. LEXIS 28217, at *93-94 (6th Cir. Dec. 22, 2009) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997)). Nonetheless, it remains that the hallmark of injunctive relief is a likelihood of irreparable harm. *Patio*

*Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("[T]he demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22-23 (2008) (rejecting the notion that a mere "possibility" of irreparable injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction"). Additionally, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one. Injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Layette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th. Cir. 2002); *Winter*, 555 U.S. at 24. Indeed, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Further, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir. 1984). Plaintiff has failed to carry his burden.

## IV. ANALYSIS

### A. INJUNCTION REGARDING "ATTACKS"

The first two forms of injunctive relief that Plaintiff seeks are a transfer to another correctional facility in Kentucky and an order for the cessation of "future attacks." This relief is

3

seemingly sought based upon Plaintiff's claims that Defendants have failed to protect him from ongoing "fecal attacks" at the hands of both inmates and correctional officers and two sexual attacks by other inmates.  Plaintiff's "initial burden" in demonstrating entitlement to this injunctive relief is showing of a strong or substantial likelihood of success on the merits of his Eighth Amendment "failure-to-protect" claim.

To establish liability under § 1983 against Defendants for failing to protect Plaintiff from these two types of alleged attacks, Plaintiff must prove deliberate indifference to his health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Deliberate indifference is demonstrated if the defendant "knows of and disregards an excessive risk to inmate health or safety," which requires that he "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  Plaintiff must show that the mistreatment was objectively serious, and that the defendant subjectively ignored the risk to his safety.  *Id.* at 834.

In addition, under 28 U.S.C. §1915A[1], a court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990).  "Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar."  *Neitzke,* 490 U.S. at 328; *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (indicating that an action has no arguable factual basis when the allegations are delusional or "rise to the level of the irrational or the wholly incredible").  The Court need not accept as true factual allegations that are "'fantastic or

---

[1] Because Plaintiff is a prisoner suing governmental entities and employees, his claims must be reviewed under § 1915A.

delusional'" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

### 1. Fecal Attacks

As mentioned above, on May 7, 2015, Plaintiff filed a complaint in the Eastern District of Kentucky alleging that other men were placing feces in his mouth while he slept at Northpoint Training Center. *Miles v. Bottom,* Civil Action No. 5:15-126-JMH, 2016 U.S. Dist. LEXIS 58400, at *1 (E.D. Ky.). In that action, Plaintiff alleged that beginning in August 2014 he began to be "attacked" with feces. *Id*. at *4. He explained that these "attacks" involved other inmates placing human feces in his mouth after he fell asleep, and in some instances touching his buttocks. *Id*. At some point, Plaintiff was transferred to Little Sandy Correctional Complex. While there, Plaintiff was referred for a mental health evaluation, which he attached to his reply to the motion for a preliminary injunction now before this Court, for again making allegations regarding feces put in his mouth while he slept. (DN 20, Attach. 4, Ex. BB-2, Mental Health Evaluation). The evaluation stated that Plaintiff was "functioning normally," but was delusional. *Id.*

Plaintiff was transferred to KSP on January 7, 2016. On January 11, 2016, he wrote a letter to the Warden, which he attached to the motion now before the Court, stating that, "since his arrival, the very first night here my cell door was opened to allow a inmate to get close enough to me while I am sleep to put human waste of others or anothers bodily fluid in my mouth while I am sleep." (DN 1, Attach. 2, "Ex.Y-1") Plaintiff was subsequently referred for a mental health evaluation at KSP. Following his evaluation on January 20, 2016, the psychologist concluded that he was "delusional" and "fixated on the fact that others are placing feces in his mouth while he sleeps." (DN 20, Attach. 3, "Ex. BB-1"). Plaintiff was again referred for a

5

mental health evaluation on March 9, 2016, which also concluded that he was "delusional." (DN 20, Attach. 5, "Ex. BC")

Plaintiff filed this action and motion for a preliminary injunction against KSP officials on May 13, 2016. He alleges that "feces is being used to produce bodily harm to plaintiff by intentionally dropping it in his mouth going to the back of the throat and being swallowed when he awakens and stay in the in esophagus for unlimited hours causing pain to the neck, ears, and throat." He continues: "The plaintiff has to cover his head with a pillow case and tie a shoe string around his neck to slow down the attacks. Some how they are getting under that too . . . . The plaintiff has a hard time going back to sleep once he awakens and swallow the feces because it is so uncomfortable to go back to sleep with fecal matter stuck in your throat." (emphasis added). In his reply, Plaintiff adds: "The plaintiff during the night while trying to sleep on his stomach is touched on the buttocks from the cell bars until he is awakened enough to feel it . . . . The plaintiff unconscious rolls on his back and since there is not enough oxygen to the brain, the plaintiff sleeps with his mouth open and feces placed on the tip of the fishing pole cause it to drop right in . . . . The plaintiff is still being attacked three, four, and sometime 5x a night. The plaintiff doesn't want to just stop the attacks once transferred, he wants it to stop immediately."

In response, Defendants state that Plaintiff filed a grievance regarding these allegations on March 3, 2016, and that the investigator reviewed the camera footage and determined that "at no time did anyone, staff, or inmate enter your cell. Nor have I found any other evidence to support your claim of staff and inmates entering your cell at night to do bodily harm to you." (DN 18, Attach. 1, "Inmate Grievance Form"). Plaintiff appealed this decision to the grievance committee which affirmed the initial investigator's finding. (DN 18, Attach. 1, "Grievance Committee"). Plaintiff appealed this decision to the warden who likewise affirmed the findings

of the investigator. Plaintiff then appealed to the Commissioner of the Kentucky Department of Corrections who also concurred with the original findings.

The Court finds that that Plaintiff is unlikely to succeed on the merits of this claim. On their face, Plaintiff's allegations regarding these "fecal attacks" seem "irrational" and "wholly incredible" and, thus, subject to dismissal. In addition, other than his own handwritten letters, grievances, and his verified motion, Plaintiff has submitted no evidence which supports his claim that Defendants are putting him at serious risk of harm by failing to protect him from these so-called "fecal attacks." *See, e.g.*, *Wolfe v. Vill. of Brice*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ("Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment."), In addition, Plaintiff has submitted three mental health reports, which were completed by at least two different mental health professionals, stating that Plaintiff was "delusional" and fixated on these "fecal attacks." Finally, the evidence submitted by the Defendants shows that they investigated his grievance regarding these fecal attacks and reviewed surveillance footage to confirm that no one had entered Plaintiff's cell at night.

With regard to the other three factors that must be considered, because Plaintiff's allegations regarding these fecal attacks are so "wholly incredible," he has likewise failed to present evidence that he will suffer certain and immediate harm, rather than harm that is speculative or theoretical. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). The third and fourth elements also weigh against granting preliminary injunctive relief. It is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations. Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary

reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 U.S. Dist. LEXIS 126890, at *19 (E. D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

Based upon the above, the Court holds that Plaintiff is not entitled to preliminary injunctive relief on this claim.

### 2. Sexual Attacks

In his motion for a preliminary injunction, Plaintiff also alleges that "on two separate occasions, the Plaintiff's cell door was opened and Plaintiff was sexually assaulted being witnessed the first time while [Officer] Roaker was walk officer" and a "second time . . . being witnessed by walk Officer Derek Mecek and nothing was done on behalf of the plaintiff and no disciplinary action was taken on those inmates who were identified when the camera was reviewed."

In their response to Plaintiff's allegations, Defendants submit a Prison Rape Elimination Act (PREA) Investigative Report. (DN 18, Attach. 4). The report is dated March 1, 2016. It states that Plaintiff wrote a letter, which was forwarded to the PREA investigator, in which he stated: "The very first night in my cell, my cell door was opened while I sleep and I was sexual assaulted in which I awakend to have a bowl movement and my whole ass was wet with semen." *Id.* The report stated that the PREA investigator "reviewed recorded video footage from February 27, 2016, starting at 8:30 p.m., the last time that [Plaintiff] stated in his letter that he was awake until the next morning February 28, 2016. At no other time that at let out [sic] did [Plaintiff] cell door open." *Id.* When the investigator interviewed Plaintiff regarding the incident, Plaintiff stated "I never saw my cell door open, but when I woke up to use the bathroom

8

my ass was all wet." He then stated that "this was not the first time that this occurred" and that "this had happened at other prisons he had been at." *Id.* It does not appear that Plaintiff mentioned either Officer Roaker or Officer Mecek in his letter.

Based upon this evidence, the Court concludes that Plaintiff has not established a likelihood of success on the merits with regard to this claim. First, these allegations are closely related to the surreal allegations of Plaintiff's "fecal attacks" because they both make reference to fecal matter, Plaintiff's buttocks, and his being attacked in his sleep without waking up. Second, Plaintiff has not provided any evidence other than his own allegations in his verified motion. Finally, Defendants have provided evidence that Plaintiff's report concerning at least one sexual attack was investigated and no evidence that an attack had occurred was found.

The Court's analysis of the three other factors is similar to its analysis above. Because Plaintiff's allegations regarding these attacks seem so closely related to his "fantastical" allegations regarding the "fecal attacks," Plaintiff has likewise failed to present evidence that he will suffer certain and immediate harm, rather than harm that is speculative or theoretical. The third and fourth elements also weigh against granting preliminary injunctive relief. It is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations. Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 U.S. Dist. LEXIS 126890, at *19 (E. D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.")

Thus, the Court will deny Plaintiff's motion for a preliminary injunction with respect to his request for a transfer to another facility and an order for the immediate cessation of all attacks.

### B. INJUNCTION REGARDING MEDICAL TREATMENT

The next two forms of injunctive relief that Plaintiff seeks are 1) that Correct Care Solutions staff arrange for an examination and plan of treatment by a qualified specialist; and 2) that Correct Care Solutions medical staff state-wide give Plaintiff proper medical care in the future. Plaintiff's "initial burden" in demonstrating entitlement to this injunctive relief is showing of a strong or substantial likelihood of success on the merits of his Eighth Amendment deliberate indifference claim.

As explained above, to succeed on a deliberate indifference claim, Plaintiff must prove two distinct components - one objective and one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834 1970) (citations and internal quotation marks omitted). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id.*

In his motion, Plaintiff alleges as follows:

> [Plaintiff] has reported on several occasions chest pain, a uncomfortable and painful sore neck, throat pain, ears, sleep apnea, lower back pain, in addition to his condition that is not normal and feels he has contacted some unknown contamination . . . . The medical officials are trying to cover with denying access to a specialist or prescribing medical treatment that does not help the symptoms . . . . Karen Vickery has determined the bacteria to be treated with antibiotics from observation of past treatments that did not help and has made the refusal to see him . . . . [Plaintiff] has requested the address for a ear, neck, and throat specialist that he was gona contact himself to make an appointment . . . . Plaintiff notified Correct Care Solutions medical staff again to inform them that the gastroenterologist from May 2015 recommend a follow-up treatment in one (1) year and after consulting with Dr. Tangilag and APRN, Karen Vickery, they both

decided that there no need for them to follow the doctors' order. . . . The medical dept. is causeing the unnecessary and wanton infliction of pain while delaying treatment to the neck, throat, and ears . . . . On April 27th, 2016, Plaintiff reported that he was choking on something that he swallowed when he woke up that was painful. Plaintiff was escorted to medical in cuffs. . . . [Plaintiff] was given two aspirin for the pain . . . . apprx 8:00 A the plaintiff was detained and taken to cell house 7 observation cell and stripped of all his clothes and shoes, given boxers and a smock . . . . While in segregation or psychological observation the officials failed to take plaintiff to his dental appointment and failed to reschedule it when it takes months to be seen.

Plaintiff filed several documents from his medical record with his motion. One is a letter from a private gastroenterologist dated June 20, 2015. (DN 1, Attach. 7). This letter states as follows: "The results of the recent EGD showed changes of Barrett's. This is a condition that predisposes the esophagus to cancer. A repeat endoscope is needed in 1 yr. The biopsies taken during your recent EGD DID NOT show a bacteria called Helicobacter pylori. This bacteria is known to cause ulcers."

The second is a healthcare request form he completed on January 13, 2016. (DN 1, Attach. 6., "Ex. V-2"). In it, he states: "I have been reporting from prior facility I am having ear, neck, and throat issues. I need to be evaluated to determine the damage to the esophagus, to be sure it's not gastric cancer. I seem to have a bacteria infection! I also need to know how to remove the lump in my throat when I awaken in the mornings, thru medical." The form then shows that Plaintiff was seen on that date.

Plaintiff also submits a grievance he filed on February 18, 2016. (DN 1, Attach. 8, Ex. X). In this grievance, Plaintiff writes that he has been "seeking medical treatment for my internal organs to get the proper diagnosis for my symptoms. I have trouble swallowing and deterioration of the lining of my throat. I have chest pains and I am only inspected on the outside. . . . I request to see a qualified internal doctor, ear, nose and throat specialist, or a gastroenterologist for my throat condition. Everyday my condition gets worse from the lack of

11

treatment. Can I see a doctor out of genuine concern?" In the response section of this grievance, a KSP official wrote on March 20, 2016: "You have been seen by the provider here at KSP + they have addressed your concerns. Should you wish to have a second opinion, then it is your responsibility to make the arrangements for the appointment time and secure the payment with the provider of your choice. We will provide you room for visit!!"

Plaintiff next submits a healthcare request he filed on March 14, 2016. (DN 1, Attach. 6, "Ex. V-1"). In this request, he states: "I have a serious medical issue, a infection in my throat. I need to see a doctor for anti-biotics. There are other issues going on in there and it is causeing me to have trouble swallowing. This has been reported to medical on a couple of occasions and seems to be getting worse." This form shows that Plaintiff was seen my medical staff on the following day.

In their response, Defendants submit two exhibits to show that "Plaintiff has not been denied medical treatment." These exhibits include a copy of the documents from the grievance Plaintiff initiated on February 18, 2016 (DN 18, Attach. 5) and a letter from the Department of Corrections, Health Services Division, to Plaintiff, dated April 7, 2016, which states that "we have contacted medical and mental health personnel to conduct an evaluation to determine the most appropriate treatment plan for you." (DN 18, Attach. 6).

Based upon this evidence, even if Plaintiff could establish a likelihood of success on the merits, he has not shown that he needs immediate treatment or tests to prevent irreparable injury. The Court finds it significant that there is no dispute that Plaintiff is receiving some medical treatment. In addition, the potential for irreparable harm while receiving some medical treatment is too speculative to satisfy the standard of clear and convincing evidence, and thus does not compel granting injunctive relief. *Lowe v. Vadlamudi*, 2009 U.S. Dist. LEXIS 21302, at *33

(E.D. Mich. Mar. 16, 2009) (*citing Abney v. Amgen*, Inc., 443 F.3d 540, 552 (6th Cir. 2006) ("The Sixth Circuit has held that, because 'there is no guarantee that the plaintiff's condition will improve or at least deteriorate at [a] slower rate' with an injunction, the plaintiff failed to establish irreparable harm.").

The third and fourth elements also weigh against granting preliminary injunctive relief. It is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations. Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 U.S. Dist. LEXIS 126890, at *19 (E. D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.")

For these reasons, the Court will deny Plaintiff's motion for a preliminary injunction with respect to his medical treatment.

### C. INJUNCTION REGARDING RETALIATION

In his motion, Plaintiff also asks that the Court order Defendants to stop retaliating against him for filing grievances and complaints.

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (per curiam). The plaintiff has the burden of proof regarding all three elements. *See, e.g.*,

*Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003); *Green v. Tudor*, 685 F. Supp. 2d 678, 692 (W.D. Mich. 2010). Moreover, the plaintiff must prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If the plaintiff makes such a showing, the defendants may still avoid liability by showing "that [they] would have taken the same action in the absence of the protected activity." *Whiteside v. Parrish*, 387 F. App'x 608, 612 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 399); *see also Jones v. Smolinski*, No. 1:09-CV-633, 2010 U.S. Dist. LEXIS 143638 (W.D. Mich. Aug. 31, 2010).

In his motion, Plaintiff first points to the exhibits he has labeled "Y #1,2 and 3" as examples of Defendants' retaliation against him. "Exhibit Y #"1 is Plaintiff's January 11, 2016, letter to the Warden in which he first states that KSP officials are allowing inmates to place feces in his mouth while he sleeps. "Exhibit Y #2" is Plaintiff's February 1, 2016, letter to the Deputy Warden in which he reports the same activity. "Exhibit Y #3" is Plaintiff's letter to the Governor in which he makes the same allegations. As set forth above, these allegations are simply too "fantastic" and "wholly incredible" for the Court to believe without any evidence other than Plaintiff's own testimony supporting these claims. Thus, the Court concludes that it is unlikely that Plaintiff will be able to show that that Defendants have taken an adverse action against him by allowing other inmates to place feces in his mouth and, therefore, unlikely that Plaintiff will succeed on this retaliation claim.

Plaintiff also states that he is being retaliated against by Defendants Tonya Gray and Skyla Grief by "being held at the maximum security facility . . . when he meets all requirements for minimum custody to be housed in a less restrictive environment." He then points to his

"Exhibit W." This exhibit is his appeal of the March 28, 2016, decision of the classification committee. The document shows that the appeal committee concurred with the classification's committee's initial decision and concluded as follows on April 4, 2016: "Since arriving at KSP on 1-7-16, you have expressed some concerns through written correspondence to several staff members, resulting in a mental health referral and monitoring. You have continued expressing these claims after consulting with Mental Health Staff. The override is appropriate at this time. The Behavioral Management will periodically review you and you may use your special reclassification request if you feel the situation has improved."

With regard to this retaliation claim, the Court first recognizes that filing grievances is a constitutionally protected right. *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court also recognizes that "an increase in security level. . . may be considered an adverse action that could deter a person of ordinary firmness from engaging in protected conduct." *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005). However, the Plaintiff must also establish that the adverse conduct was motivated in part by the Plaintiff's protected conduct. Plaintiff has presented no evidence in this regard. In addition, even if Plaintiff had, Defendants have presented evidence which shows that "they would have taken the same action in the absence of the protected activity." The evidence available to the Court at this time shows that Defendants changed Plaintiff's classification over continuing concerns regarding his mental health. Thus, the Court concludes that Plaintiff has not shown a likelihood of success on the merits with respect to his retaliation claim. The Court also finds that Plaintiff has failed to show that he will suffer irreparable injury if his classification status is not immediately changed.

As to the third and fourth factors, they weigh against granting preliminary injunctive relief for the same reasons discussed above. For these reasons, the Court denies Plaintiff's request for a preliminary injunction enjoining Defendants from continuing to retaliate against him.

### D.  INJUNCTION REGARDING LEGAL MAIL

Finally, Plaintiff asks the Court to enjoin Defendants from reading his legal mail.  He states that Defendants are "impinging on the plaintiff rights with reading of his legal mail that is presently being prepared for the Court."  He also states that "the facility does not allow locks and there is no way of keeping legal mail from being read and copied once plaintiff leaves his cell, then originals put back."

Defendants have submitted as evidence a grievance that Plaintiff filed regarding this issue. (DN 18, Attach. 2).  In his grievance, which was filed on January 29, 2016, Plaintiff states: "I have several different issues dealing with the Court and some of my legal paperwork is confidential and I don't feel safe when I am locked out on the yard and my cell can be accessed at anytime.  Inmates should be allowed to have one place secured for privacy purposes that will will require him to be present when searched by staff."  The grievance committee determined that inmates could not have locks at KSP because they are considered "dangerous contraband" but informed Plaintiff that he could store his legal mail "in the legal office . . . under lock and key if [Plaintiff] needs it stored securely."

The Sixth Circuit "has held that a prisoner has a fundamental interest in preserving the confidentiality of his legal mail." *Bell-Bey v. Williams,* 87 F.3d 832, 837 (6th Cir. 1996).  Thus, prison policies that regulate outgoing legal mail must further "an important or substantial governmental interest unrelated to the suppression of expression," and may not limit prisoners'

First Amendment freedoms more than necessary to protect the governmental interest involved. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974); *see also Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989) (clarifying that *Martinez* does not impose a "least restrictive means" test).

The Court finds that Plaintiff has not presented evidence showing that he is likely to succeed on this claim. At this juncture, Plaintiff has only set forth his verified "belief" that prison officials are reading his mail outside of his presence because they have the ability to access his cell when he is not in it. Plaintiff has also failed to establish that he will suffer irreparable injury if a preliminary injunction on this issue does not ensue. This claim fails to meet the third and fourth factors for the same reasons discussed above. For these reasons, the Court declines to grant Plaintiff's motion for a preliminary injunction regarding his legal mail.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion for a preliminary injunction (DN 7) is **DENIED**.

Date:




cc:    Plaintiff, *pro se*
        Counsel of Record
4413.011