# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

**DARRELL L. MILES**                                                                    **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO. 5:16-CV-P73-TBR**

**KENTUCKY DEPARTMENT**
**OF CORRECTIONS** *et al.*                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. The Court has granted *pro se* Plaintiff Darrell L. Miles leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007). For the reasons set forth below, the Court will grant Plaintiff's motions for leave to file a supplemental complaint and the action will be dismissed in part and allowed to continue in part.

## I. PROCEDURAL HISTORY

On May 13, 2016, Plaintiff filed a motion for a temporary restraining order (TRO) and a preliminary injunction (DN 1) in the United States District Court, Eastern District of Kentucky. In a Memorandum Order (DN 3), the Eastern District of Kentucky transferred the motion to this Court in accordance with 28 U.S.C. § 1391(b) because the individually-named Defendants in the motion work for Kentucky State Penitentiary (KSP), which is located in the Western District of Kentucky, and because the events described in the motion allegedly occurred at KSP. This motion was re-docketed as DN 7 when the action was transferred to this Court. On May 20, 2016, the Court denied Plaintiff's motion for a TRO (DN 9) and on June 29, 2016, the Court denied Plaintiff's motion for a preliminary injunction (DN 23).

After Plaintiff filed his motion for a preliminary injunction, he filed his complaint (DN 6). On June 24, 2016, and June 30, 2016, Plaintiff filed two documents, both of which are titled "Affidavit," and both of which contain additional allegations against Defendants (DNs 22 & 24). The Court construes these documents as motions for leave to file supplemental complaints and hereby **GRANTS** these motions. *See* Fed. R. Civ. P. 15(d) ("[T]he court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.)

The Court will consider the allegations set forth in Plaintiff's complaint (DN 6), his motion for a preliminary injunction (DN 7), his reply in support of the motion for a preliminary injunction (DN 20), the first "Affidavit"/supplemental complaint (DN 22), and the second "Affidavit"/supplemental complaint (DN 24) for purposes of conducting an initial screening of this action.

In Plaintiff's complaint and motion for a preliminary injunction combined, he names as Defendants the Kentucky Department of Corrections (KDOC), 18 KSP officials, and six medical professionals at KSP whom he indicates are employed by Correct Care Solutions (CCS). He sues these Defendants in both their official and individual capacities. Plaintiff seeks injunctive relief and monetary and punitive damages.

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. "Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* at 328; *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (indicating that an action has no arguable factual basis when the allegations are delusional or "rise to the level of the irrational or the wholly incredible"). The Court need not accept as true factual allegations that are "'fantastic or delusional'" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc.* v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The court's duty "does not

require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. Official-Capacity Claims

To the extent that Plaintiff sues Defendants in their official capacities, "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because all Defendants are employees or officers of KDOC or CCS, the claims brought against them in their official capacities for damages are deemed claims against one of these entities. *See, e.g.*, *Lambert v.*

*Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county); *Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 U.S. Dist. LEXIS 17770, at *13-14 (W.D. Ky. Feb. 11, 2013). For purposes of initial review, the Court will presume that CCS is a state actor. *See, e.g.*, *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'").

At the outset, the Court finds that Plaintiff has failed to state a claim against KDOC. This is both because a state agency is not a "person" subject to liability under Section 1983, and because the Eleventh Amendment deprives federal district courts of subject matter jurisdiction over a claim for money damages against a state and its agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144(1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court.")

The Court also finds that Plaintiff has failed to state a claim against CCS. A private corporation, like CCS, "is not liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). In the instant case, Plaintiff has not alleged that CCS's staff acted pursuant to a policy or custom in causing any alleged harm. In addition, nothing in the

5

complaint demonstrates that the action or inaction of any personnel occurred as a result of a policy or custom implemented or endorsed by CCS.

### B. Individual-Capacity Claims

#### 1. Eighth Amendment Deliberate Indifference to Safety Claims

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). In order to establish liability under the Eighth Amendment, Plaintiff must demonstrate that Defendants were deliberately indifferent to "a substantial risk of serious harm." *Farmer*, 511 U.S. at 828; *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the 'risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294.

Plaintiff alleges that KSP officials have failed to protect him and even participated in both fecal and sexual attacks upon him.[1,2] He alleges that "feces is being used to produce bodily harm to plaintiff by intentionally dropping it in his mouth going to the back of the throat and being swallowed when he awakens and stay in the in esophagus for unlimited hours causing pain to the neck, ears, and throat." He continues: "The plaintiff has to cover his head with a pillow case and tie a shoe string around his neck to slow down the attacks. Some how they are getting under that too . . . . The plaintiff has a hard time going back to sleep once he awakens and

---

[1] Although Plaintiff classifies the claims related to the allegations regarding the fecal and sexual attacks as both excessive-force claims and conditions-of-confinement claims, the Court finds that they are more aptly characterized as deliberate indifference to safety claims.
[2] On May 7, 2015, Plaintiff filed a complaint in the Eastern District of Kentucky alleging that other men were placing feces in his mouth while he slept at Northpoint Training Center. *Miles v. Bottom,* Civil Action No. 5:15-126-JMH, 2016 U.S. Dist. LEXIS 58400, at *1 (E.D. Ky.). In that action, Plaintiff alleged that beginning in August 2014 he began to be "attacked" with feces. *Id*. at *4. He explained that these "attacks" involved other inmates placing human feces in his mouth after he fell asleep, and in some instances touching his buttocks. *Id*.

swallow the feces because it is so uncomfortable to go back to sleep with fecal matter stuck in your throat." Plaintiff also states:

> The plaintiff during the night while trying to sleep on his stomach is touched on the buttocks from the cell bars until he is awakened enough to feel it . . . . The plaintiff unconscious rolls on his back and since there is not enough oxygen to the brain, the plaintiff sleeps with his mouth open and feces placed on the tip of the fishing pole cause it to drop right in . . . . The plaintiff is still being attacked three, four, and sometime 5x a night.

Plaintiff also alleges that "on two separate occasions, the Plaintiff's cell door was opened and Plaintiff was sexually assaulted being witnessed the first time while [Officer] Roaker was walk officer" and a "second time . . . being witnessed by walk Officer Derek Mecek and nothing was done on behalf of the plaintiff and no disciplinary action was taken on those inmates who were identified when the camera was reviewed." As a result of at least one of these alleged attacks, Plaintiff filed a PREA report in which he stated: "The very first night in my cell, my cell door was opened while I sleep and I was sexual assaulted in which I awakened to have a bowl movement and my whole ass was wet with semen." Plaintiff further states that when the investigator interviewed Plaintiff regarding the incident, Plaintiff stated "I never saw my cell door open, but when I woke up to use the bathroom my ass was all wet." He then stated that "this was not the first time that this occurred" and that "this had happened at other prisons he had been at."

In his complaint, Plaintiff also alleges that he has discovered why KSP officials continue to allow these attacks to occur. He writes:

> The plaintiff had an ex-girlfriend who the plaintiff stopped seeing shortly after the final sentencing in February 2010 in which she became bitter and envious. Recently the plaintiff discovered why the attacks continued after contacting so many officials in positions of authority and getting no results. To get straight to the point, the new defendants as well as old and from guards at Little Sandy as well have been enjoined to participate by the greasing of the palm. The plot or motive has been to destroy the plaintiff's character so no other females would

7

want to date him once he get out or write him while he is locked up. So [plaintiff's ex-girlfriend] have been contacting females from my past and some unknown, with the guards assistant have them on to the premises to watch plaintiff eat a turd (others human waste) then having their way with them sexually in return for watching. . . . This also explains why the plaintiff been hearing the sound of females having sex, to annoy him when he can't participate. . . . This also explains why during all the investigating of the plaintiff's complaints, there was never anything seen on camera with falsifying of documents, to shield the fact that a non-inmate and non-employee was maliciously allowed on the compound to all facilities to cause harm and more people to know. There is no telling how many females have been brung to the compound to witness the plaintiff eat a turd or how the plaintiff's name has been slandered in society. This is a very unusual situation that has been so hard to describe from the beginning. So no matter where the plaintiff goes within the department of corrections, it is not gonna stop unless court order and then by [the plaintiff's ex-girlfriend] being a non-inmate and non-employee, the staff can keep the inmates from being responsible by shifting the blame or continue to cover the fact that it is happening with all the responses being the same from every institution.

With regard to his ex-girlfriend, Plaintiff also states that "Cell 18" is where she hangs out to spy on him but that, in spite of knowing this information, he "hasn't figured out how to confront that issue without seeking disciplinary action."

Plaintiff further alleges that on March 14, 2016, Ms. Laura Delaney told Plaintiff that if "plaintiff pissed her off it would burn." He then adds: "Ms. Delaney has worked around the Plaintiff for mainly the entire time plaintiff has been here. . . . When Plaintiff fell asleep on her shift in which nine out of ten nights the plaintiff did, he woke up in the same condition he does with the other c/o working his walk, digesting fecal matter."

Plaintiff further alleges that on May 9, 2016, "C/O Shaffer" allowed "plaintiff's cell door to be opened while plaintiff was sleep and set him up to be assaulted by the same inmate from before when the p.r.e.a. report was filed."

The Court notes that Plaintiff has submitted evidence which shows that he has been referred to a mental health professional on at least three occasions for making allegations regarding these fecal and/or sexual attacks. The first evaluation took place at the institution

where Plaintiff was housed prior to being transferred to KSP. That evaluation stated that Plaintiff was "functioning normally" but was delusional. Plaintiff was also referred for an evaluation at KSP on January 20, 2016. Again, the psychologist concluded that Plaintiff was "delusional" and "fixated on the fact that others are placing feces in his mouth while he sleeps." Plaintiff was again referred for a mental health evaluation on March 9, 2016, which also concluded that he was "delusional."

Plaintiff contends that Defendants Warden Randy White, Deputy Warden Steve Ford, and Darime Ellis were deliberately indifferent to his safety because they failed to respond to the letters that Plaintiff wrote to them concerning these attacks. He also argues that the "supervisor officials" are connected with the "continuing of this practice on a routine basis."

Plaintiff also contends that Defendants Laura Delaney, M. Padilla, Roaker, Springfield, Shaffer, Freeman, Miller, and Mecek and were deliberately indifferent to his safety by encouraging Plaintiff to be attacked "by repeatedly standing by and doing nothing witnessing the Plaintiff health at risk."

Plaintiff further alleges that Defendants Vinson, Harris, Allen, Ellis, White, and Ford were deliberately indifferent to his safety by failing to take any action "while discussing it on a daily basis."

The Court finds that Plaintiff has failed to state a claim against any Defendant in his or her official or individual capacity for deliberate indifference to his safety. On their face, the allegations upon which these claims are based are "fantastical," "irrational," and "wholly incredible," especially in light of the fact that Plaintiff has alleged that these attacks occurred at each of the last three institutions where he has been incarcerated. In addition, Plaintiff has submitted three mental health reports, which were completed by at least two different mental

health professionals, stating that he is "delusional." Accordingly, Plaintiff's claims based upon his allegations of fecal and sexual attacks will be dismissed.

### 2. Eighth Amendment Deliberate Indifference to a Serious Medical Need Claims

To satisfy the objective component of an Eighth Amendment deliberate indifference claim, Plaintiff must show the existence of a sufficiently serious medical need, meaning that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.,* 390 F.3d 890, 897 (6th Cir. 2004)).

The subjective component of the Eighth Amendment standard is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

In *Alspaugh v. McConnell*, the Sixth Circuit held as follows:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

643 F.3d 162, 169 (6th Cir. 2011).

The Sixth Circuit has also held that "[a] plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). A plaintiff must also show that his claim involves more than a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment. *Westlake v. Lucas*, 537 F.2d at 860, n.5.

With regard to Plaintiff's medical condition and treatment, he alleges as follows:

> On numerous occasions [Plaintiff] has made complaints to the medical department to either remove the feces from the esophagus or to be sent out to have it removed. . . . [Plaintiff] has reported on several occasions chest pain, a uncomfortable and painful sore neck, throat pain, ears, sleep apnea, lower back pain, in addition to his condition that is not normal and feels he has contacted some unknown contamination . . . . The medical officials are trying to cover with denying access to a specialist or prescribing medical treatment that does not help the symptoms. . . . Karen Vickery has determined the bacteria to be treated with antibiotics from observation of past treatments that did not help and has made the refusal to see him. . . . [Plaintiff] has requested the address for a ear, neck, and throat specialist that he was gona contact himself to make an appointment . . . . Plaintiff notified Correct Care Solutions medical staff again to inform them that the gastroenterologist from May 2015 recommend a follow-up treatment in one (1) year and after consulting with Dr. Tangilag and APRN, Karen Vickery, they both decided that there no need for them to follow the doctors' order. . . . The medical dept. is causing the unnecessary and wanton infliction of pain while delaying treatment to the neck, throat, and ears . . . . On April 27th, 2016, Plaintiff reported that he was choking on something that he swallowed when he woke up that was painful. Plaintiff was escorted to medical in cuffs. . . . [Plaintiff] was given two aspirin for the pain. . . . . apprx 8:00 A the plaintiff was detained and taken to cell house 7 observation cell and stripped of all his clothes and shoes, given boxers and a smock. . . . While in segregation or psychological observation the officials failed to take plaintiff to his dental appointment and failed to reschedule it when it takes months to be seen.

Plaintiff has filed several documents from his medical record. One is a letter from a private gastroenterologist dated June 20, 2015. (DN 1, Attach. 7). This letter states as follows: "The results of the recent EGD showed changes of Barrett's. This is a condition that predisposes the esophagus to cancer. A repeat endoscope is needed in 1 yr. The biopsies taken during your

recent EGD DID NOT show a bacteria called Helicobacter pylori. This bacteria is known to cause ulcers."

The second is a healthcare request form he completed on January 13, 2016. (DN 1, Attach. 6., "Ex. V-2"). In it, he states: "I have been reporting from prior facility I am having ear, neck, and throat issues. I need to be evaluated to determine the damage to the esophagus, to be sure it's not gastric cancer. I seem to have a bacteria infection! I also need to know how to remove the lump in my throat when I awaken in the mornings, thru medical." The form then shows that Plaintiff was seen on that date.

Plaintiff also submits a grievance he filed on February 18, 2016. (DN 1, Attach. 8, Ex. X). In this grievance, Plaintiff writes that he has been "seeking medical treatment for my internal organs to get the proper diagnosis for my symptoms. I have trouble swallowing and deterioration of the lining of my throat. I have chest pains and I am only inspected on the outside. . . . I request to see a qualified internal doctor, ear, nose and throat specialist, or a gastroenterologist for my throat condition. Everyday my condition gets worse from the lack of treatment. Can I see a doctor out of genuine concern?" In the response section of this grievance, a KSP official wrote on March 20, 2016: "You have been seen by the provider here at KSP + they have addressed your concerns. Should you wish to have a second opinion, then it is your responsibility to make the arrangements for the appointment time and secure the payment with the provider of your choice. We will provide you room for visit!!"

Plaintiff next submits a healthcare request he filed on March 14, 2016. (DN 1, Attach. 6, "Ex. V-1"). In this request, he states: "I have a serious medical issue, a infection in my throat. I need to see a doctor for anti-biotics. There are other issues going on in there and it is causeing me to have trouble swallowing. This has been reported to medical on a couple of occasions and

seems to be getting worse." This form shows that Plaintiff was seen by medical staff on the following day. Plaintiff concludes his allegations by stating as follow: "Not one time since plaintiff arrived have the plaintiff been cultured for bacteria infection or lab work for infection, there response have been based upon the answers other facilities gave, to avoid giving treatment or documenting what they discover and be held accountable for letting matters get worse."

The Court finds that Plaintiff may have established that he has an objectively serious medical need. As stated above, the medical record dated June 20, 2015, shows that a specialist diagnosed Plaintiff with a disease that predisposes him to cancer and indicated that, as such, an endoscopy needed to be performed again within one year. Although the medical records submitted by Plaintiff show that he was regularly seen by medical providers at KSP for his medical need(s), Plaintiff specifically alleges that Defendants Vickery and Tangilag were deliberately indifferent to his serious medical by refusing to provide him with or refer him for a test that had been ordered by a gastroenterologist.

For these reasons, the Court finds that Plaintiff has failed to state a claim for deliberate indifference to a serious medical need against all Defendants except Defendants Vickery and Tangilag. *See, e.g.*, *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) (prison officials act with deliberate indifference when they "intentionally interfer[e] with . . . treatment once prescribed". . . [and] a violation may be found when a prison official deliberately ignores explicit orders of the inmate's previous doctor for reasons not related to the prisoner's medical needs); *Fantone v. Herbik*, 2011 U.S. Dist. LEXIS 152558, (W.D. Penn. Dec. 23, 2011) (deliberate indifference has been shown when "prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment")(citing *Monmouth Cty. Corr. Inst. Inmates v.*

*Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)); *Vickery v. Caruso*, No. 07-13419, 2008 U.S. Dist. LEXIS 68288, at *26-27 (E.D. Mich. Apr. 25, 2008)(finding plaintiff had stated a claim where he alleged that defendants knowingly refused to conduct certain testing that was recommended by a physician); *see also Tripati v. Hale*, No. 2:13-CV-0830, 2015 U.S. Dist. LEXIS 45857, at 14-15 (W.D. Pa. Mar. 2, 2015).

### 3. First Amendment Retaliation Claims

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The plaintiff has the burden of proof regarding all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003); *Green v. Tudor*, 685 F. Supp. 2d 678, 692 (W.D. Mich. 2010). Moreover, the plaintiff must prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If the plaintiff makes such a showing, the defendants may still avoid liability by showing "that [they] would have taken the same action in the absence of the protected activity." *Whiteside v. Parrish*, 387 F. App'x 608, 612 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 399); *see also Jones v. Smolinski*, No. 1:09-CV-633, 2010 U.S. Dist. LEXIS 143638 (W.D. Mich. Aug. 31, 2010).

### a. Security Classification

Plaintiff alleges that he is being retaliated against by Defendants Gray and Grief for continuing to file grievances and complaints. He alleges that these Defendants are retaliating against him by "being held at the maximum security facility . . . when he meets all requirements for minimum custody to be housed in a less restrictive environment." He then points to his "Exhibit W." This exhibit is his appeal of the March 28, 2016, decision of the classification committee. The document shows that the appeal committee concurred with the classification committee's initial decision and concluded as follows on April 4, 2016: "Since arriving at KSP on 1-7-16, you have expressed some concerns through written correspondence to several staff members, resulting in a mental health referral and monitoring. You have continued expressing these claims after consulting with Mental Health Staff. The override is appropriate at this time. The Behavioral Management will periodically review you and you may use your special reclassification request if you feel the situation has improved."

With regard to this retaliation claim, the Court first recognizes that filing grievances is a constitutionally protected right. *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court also recognizes that "an increase in security level . . . may be considered an adverse action that could deter a person of ordinary firmness from engaging in protected conduct." *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005). However, the document that Plaintiff attaches as Exhibit W undercuts his allegation that he is being held in a maximum security facility because of his protected conduct and instead indicates that he is being held there based upon his mental health.

Thus, the Court concludes that Plaintiff has failed to state a retaliation claim based upon his security classification and this claim will be dismissed for failure to state a claim upon which relief may be granted.

### b. Allowance of Fecal and Sexual Attacks

Plaintiff also alleges that several Defendants permitted the fecal and sexual attacks upon him to continue because he has filed grievances and complaints. In his second supplemental complaint, he also alleges that since the Court denied his TRO, "there are new defendants that are opening the plaintiffs cell door regularly to have him sexually assaulted . . ." However, as set forth above, the Court finds Plaintiff's allegations regarding these attacks to be too "wholly incredible" to actually state a claim upon which relief may be granted. Therefore, his retaliation claim based on allegations of fecal and sexual attacks will be dismissed.

### c. Hostage-Taking

In the document titled "Affidavit," which this Court construes as a supplemental complaint, Plaintiff alleges that "in retaliation for filing my complaint against D.O.C. officials at [KSP], Lieutenant Allen and Warden Randy White has authorized the luring of my family members to be held hostage by the inmates at [KSP]." The Plaintiff alleges that those captured include his two sisters, his daughter, his mother, and "Hana Ali," the daughter of "Mahommed Ali." He states that these individuals are "being beaten to not report their capture." Plaintiff alleges that "this most extreme form of retaliation" has been taken to get Plaintiff to drop his lawsuit . . ."

Like Plaintiff's allegations regarding the fecal and sexual attacks against him, the Court finds that these allegations too are "fantastical" and "wholly incredible." Thus, this claim will be dismissed as frivolous.

### 4. First Amendment Interference with Legal Mail Claim

The Sixth Circuit "has held that a prisoner has a fundamental interest in preserving the confidentiality of his legal mail." *Bell-Bey v. Williams*, 87 F.3d 832, 837 (6th Cir. 1996). Thus, prison policies that regulate outgoing legal mail must further "an important or substantial governmental interest unrelated to the suppression of expression," and may not limit prisoners' First Amendment freedoms more than necessary to protect the governmental interest involved. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974); *see also Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989) (clarifying that *Martinez* does not impose a "least restrictive means" test).

Plaintiff alleges that Defendants are "impinging on the plaintiff rights with reading of his legal mail that is presently being prepared for the Court." He also states that "the facility does not allow locks and there is no way of keeping legal mail from being read and copied once plaintiff leaves his cell, then originals put back." Plaintiff continues: "The reading of the mail the plaintiff have been complaining of is to see how much information the plaintiff actually know . . . This explains why the mail was stolen to get the name and address of people who plaintiff was in contact with." He also states: "The inmates have been using the plaintiff to there advantage in a variety of ways and the plaintiff's personal information in obtaining a credit report has been difficult from prison, possibly stealing money from his name and information."

Thus, Plaintiff's claim seems to be that Defendants have violated his rights by failing to provide Plaintiff with a locked place to store his legal mail. However, because Plaintiff has not alleged that any of the 25 Defendants he has named actually read his legal mail, the Court finds that Plaintiff has failed to state a claim regarding such. This claim will therefore be dismissed.

### 5. PREA Claim

Plaintiff also alleges that Defendant Ellis failed to conduct an adequate investigation based upon a Prison Rape Elimination Act (PREA) report that he filed. He further states that he has been prevented from filing any future PREA complaint "because he does not have the exact time of the attacks because of being asleep." However, the Court finds that Plaintiff has failed to state a claim under PREA because PREA does not provide a private cause of action. *See, e.g.*, *Beckham v. Keaton*, No. 14-CV-159-HRW, 2015 U.S. Dist. LEXIS 29736 (E.D. Ky. Mar. 10, 2015); *Simmons v. Solozano*, No, 3:14-CV-P354-H, 2014 U.S. Dist. LEXIS 129249 (W.D. Ky. Sept. 16, 2014); *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 U.S. Dist. LEXIS 114727 (W.D. Ky. Aug. 19, 2014); *Chapman v. Willis*, No. 7:12-CV-00389, 2013 U.S. Dist. LEXIS 74694 (W.D. Va. May 28, 2013); *Holloway v. Dep't of Corr.*, No. 3:11-CV-1290(VLB), 2013 U.S. Dist. LEXIS 23243 (D. Conn. Feb. 20, 2013). Accordingly, Plaintiff's claim under PREA will be dismissed for failure to state a claim upon which relief may be granted.

### 6. Grievance Claim

Plaintiff also brings suit against Defendant Daniel Smith, "law library staff who oversee's the grievance . . . ." Plaintiff does not specifically allege how Defendant Smith has violated his rights. However, prison inmates do not have a constitutionally protected right to a grievance procedure. *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 138 (Burger, J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x. 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have also found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."). And if prisoners do not possess a constitutional right to a grievance procedure, then they certainly do not have a claim premised on an ineffective

procedure. *LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 34 (6th Cir. 2001) (holding that inmate "cannot premise a § 1983 claim on allegations that the jail's grievance procedure was inadequate because there is no inherent constitutional right to an effective prison grievance procedure") (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (holding that if the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right). Therefore, Plaintiff's grievance-related claim will be dismissed for failure to state a claim upon which relief may be granted.

### 7. Taking of Clothes and Shower Claim

Plaintiff also brings suit against Defendant Harris for taking his clothes "once they were returned" and allowing him to shower while he was housed in a cold cell. The Court finds that these allegations fail to a state claim for relief under any constitutional standard, and, thus, will dismiss Plaintiff's claim against Defendant Harris.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motions for leave to file supplemental complaints (DN 22 & 24) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims based upon deliberate indifference to his safety, deliberate indifference to a serious medical need (excepting his claim based upon Defendants Vickery and Tangilag's refusal to refer him for an endoscopy), retaliation, the reading of his legal mail, PREA, the grievance procedure, and the clothes and shower allegations are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and/or frivolousness.

The Clerk of Court is **DIRECTED** to terminate Defendants KDOC, Randy White, Steve Ford, Skyla Grief, Darime Ellis, Lieutenant Allen, Lieutenant Harris, Daniel Smith, Sergeant Christopher Vinson, Derek Mecek, Laura Delaney, M. Padilla, Roaker, Springfield, Shaffer, Freeman, Miller, Kirst, John Doe, Jane Doe, Correct Care Solutions Staff, Tonya Gray, Bruce Bauer, Jill Shelton, and Pamela Reece as parties to this action.

A separate Scheduling Order will be entered to govern the continuing claims.

Date:

cc: Plaintiff, *pro se*
 Defendants
 Counsel of Record
4413.011