DARRELL L. MILES,                                                                                                   PLAINTIFF

v.

KENTUCKY DEPARTMENT
OF CORRECTIONS, *et al.*,                                                                          DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on Defendants Shastine Tangilag and Karen Vickery's ("Defendants") Motion for Summary Judgment, [R. 98]. Plaintiff Darrell Miles responded, [R. 99], and Defendants replied, [R. 100]. Subsequently, Miles filed a Response to Deny Defendants' Summary Judgment, [R. 101], and a Reply in Opposition of the Defendants' Motion for Summary Judgment, [R. 104].[1] Full briefed, this matter is ripe for adjudication. For the reasons stated herein, Defendants' Motion for Summary Judgment, [R. 98], is **GRANTED**.

## BACKGROUND

Darrell Miles is an inmate confined with the Kentucky Department of Corrections who suffers from Gastroesophageal Reflux Disease, commonly known as GERD. [R. 97 at 5 (Miles Sealed Medical Records).] On April 22, 2015, Dr. Angela Clifford recommended that Miles have

---

[1] Miles, in effect, filed two sur-replies, [*See* R. 101 (Miles Response to Deny Defendants' Summary Judgment); R. 104 (Miles Reply in Opposition of the Defendants' Motion for Summary Judgment)]. In responding to the first sur-reply, Defendants stated that they had no objection to it. [R. 102 at 1.] Defendants did not respond to Miles's second sur-reply, [R. 104]. In light of the less stringent standard to which the Court holds an individual who proceeds pro se, the Court will consider the arguments raised in Miles's sur-replies. *See Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) ("Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances . . .."); *see also Simpson v. Bredeson*, No. 2:10-cv-02950-JPM-tmp, 2015 U.S. Dist. LEXIS 128271, at *12 (W.D. Tenn. Sept. 24, 2015); *Wilson v. United States*, 3:09-CV-42, 2010 U.S. Dist. LEXIS 28727, at *1 n.2, 2010 WL 2191263 (E.D. Tenn. Mar. 25, 2010) (accepting pro se plaintiff's sur-reply even though filed without leave of court).

an endoscopy (EGD) after he complained of "regurgitating stomach contents, some dark blood, & what appears to be tissue daily." [R. 101-2 at 1 (Dr. Clifford Notes).] She noted that Miles "had been on Prilosec & using a wedge without help," but that Miles mentioned that "he does not have that much pain." [*Id*.] On May 18, 2015, Dr. Mark Spurlin performed an endoscopy (EGD) on Miles. [R. 97 at 2.] About a month later, June 12, 2015, Miles met with Tyara Hughes, APRN, to discuss the EGD results, recent lab work, and medications. [*Id*. at 5.] In a letter to Miles dated June 20, 2015, Dr. Spurlin wrote that the results of the EGD showed a condition that predisposes the esophagus to cancer and a repeat endoscope was needed in one year. [R. 99-1 at 1 (Spurlin Letter).] On January 18, 2016, Miles saw Dr. Shastine Tangilag regarding his reflux. Tangilag noted in Miles's medical records that she had a "long discussion with the inmate regarding the plan of care." [R. 97 at 10.] Furthermore, Tangilag noted that Miles "insisted that the GI specialist wanted to re-scope him this year. I will have to review the records from the outside hospital." [*Id*.] One month later, February 8, 2016, Miles saw Karen Vickery, APRN, regarding his GERD. [*Id*. at 12.] According to the medical records, Vickery noted that Miles complained of "sensation of FOB in throat on wakening every morning," "vomiting after brushing his tongue," and feeling that "his 'trap' is eroded causing his sxs." [*Id*.] Vickery further noted that Miles was to continue his medications as ordered, that she would review his records from the gastroenterologist, and that the goal was for Miles to have improved side effects. [*Id*.]

Dr. Tangilag then saw Miles again on September 6, 2016, due to complaints of sore throat, a feeling like "there is a beefy red tissue that is stuck in his throat," dry mouth, and possible sleep apnea. [R. 97 at 14.] She again noted a "long discussion with the inmate regarding plan of care." [*Id*. at 13.] She further noted that his condition, i.e., "Barrett's esophagus," needed to be treated with a certain medication but Miles refused to take that medication, so she gave him

2

something different instead. [*Id.*] Lastly, Tangilag wrote that Miles was "under the impression that he needs to go back for another endoscopy in a year due to his Barrett's," but "[p]er American College of Gastroenterology recommendations, non dysplastic BE should undergo surveillance no more frequently than every 3-5 years." [*Id.*]

In May and June of 2016, Miles filed a Complaint and two supplemental complaints. [R. 6; R. 22; R. 24.] After the Court conducted an initial review pursuant to 28 U.S.C. § 1915A, the Court allowed the following claims to go forward: "the 42 U.S.C. § 1983 claims of deliberate indifference to a serious medical need against Defendants Shastine Tangilag and Karen Vickery in their individual capacities for compensatory and punitive damages and in their official-capacities for injunctive relief only based on Plaintiff's allegations that they refused to refer Plaintiff for an endoscopy as directed by a physician." [R. 31 at 1.]

According to Miles's medical records, Miles underwent another endoscopy, performed by Dr. Elizabeth Holt, on March 13, 2017. [R. 97 at 16.] Afterwards, Dr. Holt recommended a "[r]epeat EGD in 3-5 years if no dysplasia on biopsies." [*Id.*] The results of the biopsies showed no dysplasia. [*Id.* at 17.]

Currently before the Court is Defendants' Motion for Summary Judgment, [R. 98].

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining

whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the defendant must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the plaintiff's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the defendant satisfies his or her burden of production, the plaintiff "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).[2]

## DISCUSSION

Defendants move for summary judgment regarding Miles's claim that Defendants were deliberately indifferent to his serious medical needs. Specifically, Miles alleges that Defendants were deliberately indifferent when they refused to refer Plaintiff for an endoscopy as directed by a physician. As Miles was eventually referred for an endoscopy, the Defendants emphasize that they are entitled to judgment as a matter of law because Miles "cannot satisfy the objective component of the Eighth Amendment's deliberate indifference standard where the material facts

---

[2] The Court is mindful that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner,* 404 U.S. 519 (1972).

4

establish that Plaintiff did not suffer any detrimental effect from the temporary delay in the preventive EGD testing." [R. 100 at 4.] The Court agrees with Defendants.

### A. The Dual Components of Deliberate Indifference

"Where prison [or jail] officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "The test to determine whether . . . officials acted with 'deliberate indifference' has an objective and subjective component. The objective component requires an inmate to show that the alleged deprivation is 'sufficiently serious.' As the Supreme Court explained in *Farmer,* '[t]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.' To satisfy the subjective component, an inmate must show that prison officials had 'a sufficiently culpable state of mind.'" *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

### B. The Objective Component

In alliance with the First, Third, and Eleventh Circuits, the Sixth Circuit held in *Napier* that a court may "examine the seriousness of a deprivation by examining the effect of the delay in treatment." *Napier*, 238 F.3d at 742. However, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id*. at 742 (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1188 (11th Cir. 1994)). In *Napier*, an arrestee, Jeffrey Napier, who suffered from complete kidney failure was prevented from attending his dialysis treatment while he was incarcerated, however, medical records showed that

5

he frequently skipped dialysis treatments. *Id*. at 741. The Sixth Circuit agreed with the district court that Napier could have received dialysis a few hours after the scheduled appointment, and, therefore, he suffered a "delay in treatment" rather than a complete denial of treatment. *Id*. at 742-43.

The Sixth Circuit later clarified that the "verifying medical evidence" requirement is only relevant to those claims "involving minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004). Specifically, "*Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," but it *does* apply "where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious." *Id.* at 898. The Sixth Circuit has also described the objectively serious prong of *Napier* as requiring a two-part inquiry in which the reviewing court should first determine "whether the injury is 'obvious,' i.e. 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Cain v. Irvin*, 286 F. App'x 920, 927 (6th Cir. 2008). Then, "[i]f there is an obvious need for medical treatment, then the court must determine whether the delay in securing that care was reasonable. If, however, the injury is not apparent or relatively minor, *Napier* governs, and a plaintiff must provide 'medical evidence' demonstrating that the delay in treatment resulted in additional injury." *Id*.

Here, both parties refer to the *Napier* analysis over delay in treatment within their briefing. [*See* R. 100 at 3; R. 104 at 5-6.] Ultimately, Miles was not denied another EGD, as a second EGD was performed on March 13, 2017. Thus, the Court will analyze the effect of the

6

delay in the treatment. *See Napier*, 238 F.3d at 742-43 (analyzing the effect of delay in medical treatment when the inmate could have later received the treatment).[3]

Defendants argue that Miles "has not (and cannot) point to any medical evidence in the record to establish a 'detrimental effect of the delay' in receiving the preventive EGD testing . . . ." [R. 100 at 4.] Miles responds that his medical need was serious because, in June of 2015, Dr. Spurlin ordered a follow-up EGD in one year—noting that the EGD showed "changes of Barrett's" which "is a condition that predis[p]oses the esophagus to cancer." [R. 104 at 6; R. 99-1 at 1.] Furthermore, Miles argues that there may be "possible additional damage caused from delay and defendants are liable." [R. 101 at 8.]

1. **Whether the Injury is "Obvious"**

First, the Court finds that Miles's medical needs regarding his GERD were not "obvious." As pointed out by Defendants, Miles's situation is similar to the facts of *Napier*. The Sixth Circuit did not find Napier's medical condition of kidney failure to be "obvious," and, therefore, engaged in the "verifying medical evidence" approach. *Id*. at 743. Like Napier's kidney failure condition, Miles's GERD is dissimilar from injuries and medical conditions courts in the Sixth Circuit have commonly deemed "obvious." *See, e.g., Newberry v. Melton*, 726 F. App'x 290, 295 (6th Cir. 2018) ("Newberry's condition—characterized by frequent, often lengthy, and aggressive convulsions—is sufficiently obvious that it does not require additional verifying medical evidence"); *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir.

---

[3] In a letter to Miles, Dr. Spurlin stated that "[a] repeat endoscope is needed in 1 yr." [R. 99-1 at 1.] One year after this letter would have been June 20, 2016. Thus, Defendants estimate that there was a nine-month delay between the one-year deadline Dr. Spurlin suggested in the medical records and the actual date of the second EGD. Miles disagrees, stating that "Dr. Spurlin's recommendation was to revisit his practice." [R. 104 at 14.] Therefore, Miles concludes that because Dr. Spurlin did not perform the second EGD, the delay is now over forty-months and counting. [*Id*.] As Dr. Spurlin's letter broadly states that a repeat endoscope is needed, rather than he has to be the doctor to perform it, the Court disagrees with Miles's conclusion. Furthermore, Miles gives no reason why Dr. Holt performing the endoscopy did not serve the same purpose as Dr. Spurlin performing the same procedure.

2005) (holding that "the emergency hospital admission coupled with a stay of several days satisfies the objective requirement of a 'sufficiently serious' medical need" after a lock-up facility failed to give an arrestee her required insulin injections); *Blackmore*, 390 F.3d at 899.

For example, in *Blackmore*, the Sixth Circuit held that the case fell under the "'obviousness' line of decisions," because the inmate plaintiff "did not suffer from a long-term and well monitored illness, but rather exhibited obvious manifestations of pain and injury," which was later diagnosed as appendicitis. *Blackmore*, 390 F.3d at 899. There, the inmate complained orally and in writing of sharp and sever stomach pains for two days and vomited at one point before receiving medical treatment. *Id*. Here, the multiple visits with medical personnel at Kentucky State Penitentiary reveal that his GERD was a "long-term and well monitored illness." [R. 97 at 5-14.] In each of the five occasions listed by Defendants, Miles was seen by either an Advanced Practice Registered Nurse (APRN) or a medical doctor who discussed medications and lifestyle adjustments to aid his GERD. [*Id.*]

Miles counters Defendants' view by arguing that his medical need satisfies the obvious requirement because Dr. Spurlin wrote that his condition predisposed his esophagus to cancer. [R. 104 at 6 (citing R. 99-1 at 1).] Although one naturally considers any health condition involving cancer to be "serious," case law out of the Sixth Circuit does not necessarily consider a condition that may predispose one to cancer as an "obvious" injury under the analysis originating from *Napier*. For example, in *Simeon v. Kentucky Dep't of Corr.*, the inmate plaintiff sued over several delays in detecting and treating his prostate cancer. *Simeon*, No. 3:14-046-GFVT, 2015 WL 5769092, at *5 (E.D. Ky. Sept. 30, 2015). The Eastern District of Kentucky found that the inmate plaintiff could not establish a colorable Eighth Amendment claim of deliberate indifference because the inmate did not provide any verifying medical evidence, "such as an

expert medical opinion that either the delay in his surgery and/or any delay surrounding his post-surgery radiation treatments, caused his condition to worsen." *Simeon*, No. 3:14-046-GFVT, 2015 WL 5769092, at *4. Another example is *Rouse v. Caruso*, in which a plaintiff inmate, who had a kidney, several ribs, and malignant lymph nodes removed, claimed that the department of corrections officials "abruptly stopped his blood tests and x-rays used to detect whether his cancer had returned, causing him great anxiety." *Rouse*, No. 2:06-CV-10961, 2014 WL 7877155, at *9 (E.D. Mich. Aug. 5, 2014), *report and recommendation adopted,* No. 06-CV-10961, 2015 WL 632025 (E.D. Mich. Feb. 13, 2015). The Eastern District of Michigan held that defendants were entitled to summary judgment on the matter because the plaintiff inmate did not allege that "his cancer returned, or that he suffered any worsening of his medical condition as a result of the discontinuation of these screenings." *Id*. As illustrated by *Simeon* and *Rouse*, a cancer diagnosis may be considered a non-obvious medical condition, and, therefore, require evidence that the medical condition worsened due to the delay in treatment. Thus, the Court is unconvinced by Miles's argument that his medical condition was "obvious" due to his predisposition to cancer of the esophagus. The Court finds that Miles's "injury is not apparent" and *Napier* governs. *Cain*, 286 F. App'x at 927.

2. **Verifying Medical Evidence**

The Court ensured that Miles had full access to his medical records, [*See* R. 79 and R. 80], and observes that Miles's citation of certain records confirm that fact. Yet, the Court finds that Miles failed to provide medical evidence demonstrating that the delay in treatment resulted in additional injury. Although Miles broadly alleges that there are "unlimited inferences" within the medical record of the extent of his suffering, he fails to point to a specific example. [R. 104 at 8.] He also notes that there may be "possible additional damage caused from delay," but he

9

provides no evidence of detrimental effect of the delay in medical treatment. [R. 101 at 8.]⁴ Throughout the multiple briefs Miles filed with the Court he mentions suffering from pain due to his GERD, [R. 99 at 8; R. 101 at 10; R. 104 at 13], and even accuses Tangilag and Vickery of being indifferent to that pain, [R. 104 at 11, 13]. However, Miles does not provide any verifying medical evidence that the delay of nine months before his second EGD had a detrimental effect. *See, e.g., Maddle v. Corr. Med. Servs., Inc.*, No. 3:05-0306, 2008 WL 839715, at *7 (M.D. Tenn. Mar. 26, 2008) (holding that the plaintiff raised a genuine material issue of fact by submitting a doctor's affidavit stating that "the delay in diagnosis, diagnostic imaging, consultative intervention, and appropriate surgery produced prolonged discomfort" for the plaintiff). Furthermore, the Court notes that results of the preventative screening by Dr. Holt were negative for eosinophilia or intestinal metaplasia, dysplasia in his esophagus, and eosinophilia or intestinal metaplasia. [R. 97 at 18.] Due to these results, Dr. Holt noted that a repeat EGD would not be needed for another three to five years. [*Id.* at 16.]

The Court finds that Defendants have successfully shouldered the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Miles's claims, and Miles has failed to show specific facts that reveal a genuine issue for trial. Therefore, Defendants' Motion for Summary Judgment, [R. 98], is GRANTED.⁵

**CONCLUSION**

---

⁴ However, Miles does question Dr. Holt's interpretation of his EGD and asks for clarification on one of her comments listed under "Impressions." [*See* R. 97 at 15-16.] As the Sixth Circuit has stated, "this Court is generally reluctant to second guess medical judgments." *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018). Thus, the Court will not second guess the medical judgment of Dr. Holt.

⁵ As the Court found that Defendants successfully argued a genuine dispute of material fact as to at least one essential element, i.e., the objective component, the Court finds it unnecessary to consider the parties' arguments regarding the subjective component.

For the foregoing reasons, Defendants' Motion for Summary Judgment, [R. 98], is **GRANTED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

February 5, 2019

cc: Counsel of Record

Darrell L. Miles, pro se
155111
KENTUCKY STATE PENITENTIARY
266 Water Street
Eddyville, KY 42038